

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LENA MARSHALL | § | |
| | § | |
| VS. | § | Civil Action No. 4:05cv165 |
| | § | (Judge Bush) |
| DAIMLER CHRYSLER SERVICES | § | |
| NORTH AMERICA, L.L.C. | § | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Docket #23).  Having considered, the motion, Plaintiff's response, and Defendant's reply, the Court finds as follows.

## Facts

Although Plaintiff frequently cites to her exhibits throughout her response, she neglected to attach any summary judgment evidence to her response filed electronically with the Court.  Rather, she merely attached a list of six documents which she labeled "Plaintiff Lena Marshall's Appendix to her Response to Defendant's Motion for Summary Judgment."  Plaintiff served her response upon Defendant via fax and first class mail; however, Defendant represents in its reply that the response likewise had no evidence attached.  Plaintiff was put on notice of the deficiency when Defendant filed its reply, but has never sought leave of court to correct her error.  At this point, it would be unfair to Defendant to allow Plaintiff to supplement her response.  The Court must therefore primarily rely upon the evidence submitted by Defendant in order to determine the facts of this case.  However, in the interest of justice, and as not to prejudice Plaintiff for her attorney's mistakes, the Court will consider certain facts alleged by Plaintiff as though they were supported by competent summary judgment evidence.

1

*******

Plaintiff, a black female, began working for Defendant on January 18, 1998 as a Customer Service Representative.  Although the company for which Plaintiff began working was apparently Mercedes-Benz Credit Corporation, after a merger the company became Daimler Chrysler Services North America, L.L.C. ("DCS").   DCS is a financial institution which loans money to customers purchasing Mercedes Benz, Chrysler, and Dodge Vehicles.   Plaintiff received six pay increases while employed at DCS, and although she claims her duties ranged from Training Coordinator to Loss Mitigation Specialist, the evidence suggests that when Plaintiff was terminated she was still working as a Customer Service Representative.

In July of 2003, Plaintiff attended a meeting at DCS to discuss changes resulting from a merger between Chrysler Corporation and Daimler-Benz.  Plaintiff inquired as to what she was going to do after the merger.  Plaintiff was apparently concerned that some of her training duties would be reassigned to another department after the merger.  Scott McClenaghan responded that Plaintiff did not need to worry because there would always be positions in the cafeteria.[1]

A few days after the meeting, Plaintiff approached Mr. McClenaghan in his office and informed him that she was offended by his comment.  Mr. McClenaghan stated that he did not intend the comment to be offensive and that he failed to see why Plaintiff was offended by the comment. Plaintiff stated that she did not expect him to understand because he was not a black woman. Plaintiff also claims to have made complaints to Rick Galemore and the CEO of DCS.  Mr. McClenaghan apologized for the comment, but stated that he did not feel the need to walk on

---

[1] Plaintiff claims, without submitting evidence, that McClenaghan stated that there would always be jobs in the "kitchen."

eggshells around Plaintiff.   Mr. McClenaghan later apologized to Plaintiff by email.   He also informed his supervisor, Tim Denomie, of the complaint.  Mr. Denomie took the complaint seriously but stated he did not understand how it was racially offensive.

In October of 2004, the collections department at DCS received a call from Doris Vaughns, who stated that she believed that someone at DCS had accessed her credit report without her permission.   The unauthorized access, according to Ms. Vaughns, caused a lender to increase the interest rate quoted to her in a home loan.   As a result, she was not able to purchase the home and lost her earnest money.   She also claimed that the inquiry lowered her credit score.   She informed DCS that she believed Plaintiff was behind the credit inquiry because Plaintiff had called her and taunted her about the inquiry.[2]  She supplied DCS with her cell phone bill which showed a call from Plaintiff's phone.  Ms. Vaughns also stated that Plaintiff was living with Michael Ford, whom Ms. Vaughns knew and subsequently dated.[3]

Upon receiving the complaint from Ms. Vaughns, DCS began conducting an investigation. Mr. McClenaghan originally spoke with Ms. Vaughns about the complaint.  However, as he was not Plaintiff's supervisor, he turned the information over to Richard Galemore and Wes Bumgarner. Plaintiff was defensive and argumentative during the investigation and denied knowing of and calling Ms. Vaughns.  Messrs. Galemore and Mr. Bumgarner concluded that she had been dishonest about whether she knew of and called Doris Vaughns.  Messrs. Galemore and Bumgarner terminated Plaintiff's employment on November 29, 2004 for violating DaimlerChrysler Standard of Conduct

---

[2] As part of her duties, Plaintiff was able, at times, to access credit reports through a credit reporting agency.

[3] There is some evidence that Michael Ford and Doris Vaughns were involved in a relationship before Plaintiff and Ford began living together and that Plaintiff first learned of Vaughns when Ford moved in with her. (Marshall Depo. at 111:20-25).

#1, which states that employees shall not, "Provid[e] false and/or misleading information to the Corporation."

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 5, 2005 alleging that she had been discriminated and retaliated against based on her race and sex. Plaintiff filed the present action in the Northern District of Texas on April 6, 2005, and the case was transferred to this Court on May 2, 2005. Plaintiff alleges claims for discrimination, retaliation, and harassment under Title VII, 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981. She also alleges a claim under Texas law for Tortious Interference with an Existing Contractual Relationship. Defendant has moved for summary judgment on each of Plaintiff's claims.

## Standard

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party

will bear the burden of proof, then summary judgment will be appropriate.  *Celotex*, 477 U.S. at 323.

Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will

be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations

omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted."  *Id.*

## **Discrimination**

Plaintiff bases many of her claims on Title VII and § 1981.[4]  When used as parallel causes

of action, as is the case here, Title VII and § 1981 require the same form of proof.  *Shackelford v.

Deloitte & Touche, LLP,*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).  Therefore, the Court need not

address the statutes separately.

In order to establish a *prima facie* case of discrimination, Plaintiff must show that she: (1)

belonged to a protected class; (2) was qualified for her position; (3) was subjected to an adverse

employment action; and (4) was replaced by someone that did not belong to her protected class.  *Id*.

at 404.  Plaintiff has failed to offer any evidence, or argument for that matter, that she was replaced

by someone who did not belong to her protected class.   She has likewise failed to show that anyone

outside of her protected class violated Standard of Conduct #1 and was not terminated.  Plaintiff has

therefore failed to plead a *prima facie* case of race or sex discrimination and the Court finds that her

discrimination claims should be dismissed with prejudice.

## **Retaliation**

Plaintiff also claims that she was discharged in retaliation for making complaints of racial

---

[4]Plaintiff correctly does not state a claim for sex discrimination under § 1981, as § 1981 does not support claims for sex discrimination.  *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).

5

discrimination.   In order to prove a *prima facie* case of retaliation under Title VII and § 1981, Plaintiff must show that: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.   *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Plaintiff's complaint about McClenaghan's comment in the July 2003 meeting likely constitutes protected activity.[5]  Protected activity includes opposing any unlawful employment practice.  *See* 42 U.S.C. 2000e-3(a).   It is not necessary that the practice actually be unlawful, as long Plaintiff reasonably believed the practice was unlawful.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000).  No party disputes that Plaintiff's termination constituted an adverse employment action.   The question, then is whether there is a causal link between Plaintiff's complaint and her termination.

The Court notes that the causal link required to establish a *prima facie* case is less stringent than a "but for" standard.  *See Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  A causal link is established when there is evidence to suggest that the employer's decision to terminate was based in part on the employee's protected activity.  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (finding causal link when employer knew of complaint prior to terminating employee).    Plaintiff has simply failed to submit any evidence of a causal link between her complaints and her termination.  Although Plaintiff argues that Rick Galemore, who joined in the decision to terminate her, was personally aware of her complaint regarding McClenaghan's

---

[5]While the Court notes that filing an EEOC charge constitutes protected activity, the filing of Plaintiff's EEOC charge is irrelevant to Plaintiff's retaliation claim since it was filed subsequent to her termination.  *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755 n. 5 (5th Cir. 2005).

comment, she has submitted no competent evidence to support her assertion.[6]

Based on the evidence before the Court, the only possible link between Plaintiff's protected activity and her termination was the timing between the two. While close timing between protected activity and termination may provide a "causal connection," the mere fact that adverse action is taken after an employee makes a complaint of harassment cannot, standing alone, support a *prima facie* case of retaliation. *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 655 (5th Cir. 2004); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Although Plaintiff has established that she was terminated subsequent to her complaint, she has failed to show the proximity in time necessary to, standing alone, support a *prima facie* case of discrimination. Plaintiff's termination 17 months subsequent to her protected activity does not, without more, establish a *prima facie* case.[7] *See Raggs. v. Mississippi Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (finding that mere 5 months lapse between protected activity and adverse action was not sufficient, standing alone, to create causal connection). Furthermore, Defendant has submitted unrebutted evidence that Mr. McClenaghan took no role in the decision to terminate Plaintiff. The uncontraverted evidence establishes that Rick Galemore and Wes Bumgarner decided to terminate Plaintiff after conducting an independent investigation in which they determined that Plaintiff had violated Standard of Conduct #1. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1123-24 (5th Cir. 1998)(when the decision maker conducts an independent investigation and arrives at acceptable grounds for

---

[6]Plaintiff argues in her motion that she complained directly to Rick Galemore about McClenaghan's comment. Such may be sufficient to establish a causal link if it was supported by competent summary judgment evidence.

[7]While Plaintiff cites *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409 (5th Cir. 2003) in support of her proposition that the Fifth Circuit has considered a gap of six years between protected activity and adverse action to constitute proximity, the Court finds this opinion to be inapplicable as *Fabela*, unlike the present case, involved direct evidence of discrimination.

termination, causal link between termination and protected activity is severed).

Had Plaintiff established a *prima facie* case, the Court would nevertheless find dismissal appropriate as Defendant has met its burden under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under the *McConnell Douglas* framework, after Plaintiff established a *prima facie* case, Defendant would be required to articulate a legitimate, non-retaliatory reason for Plaintiff's termination. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). If Defendant met its burden, Plaintiff would be required to show that either (1) Defendant's proffered reason is a pretext for retaliation; or (2) that Defendant's reason, while true, was but one reason for termination, another of which was retaliation. *Id.* (applying mixed-motive analysis to FMLA retaliation claim); *see also Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) (apply mixed motive analysis to ADEA case).

In the present case, Defendant has offered uncontested evidence that Plaintiff was terminated for violating Standard of Conduct #1. Plaintiff's termination, while related to an accusation that she pulled a credit report without authorization, was actually a result of her conduct during the course of the investigation conducted by Messrs. Galemore and Bumgarner. Plaintiff has offered no evidence that her termination was a pretext or that retaliation played any role in the decision to terminate her. The Court therefore finds that Plaintiff's retaliation claim should be dismissed with prejudice.

## **Harassment**

Plaintiff claims that she was harassed in violation of Title VII and § 1981 when McClenaghan commented that there would always be jobs available in the cafeteria/kitchen. The comment was allegedly made in June or July of 2003. Plaintiff filed her EEOC complaint on

January 5, 2005, well over 300 days after the alleged incident.   The Court therefore finds that Plaintiff has failed to comply with Title VII's administrative requirements and that Plaintiff's Title VII harassment claim should be dismissed.   42 U.S.C. § 2000e-5(e)(1); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).   Furthermore, even if Plaintiff's EEOC charge had been timely filed with respect to her harassment claim, she has failed to mention the incident in her charge.   She has also failed to allege, or submit evidence to support, a contention that the harassment was but one incident in a series of continuing violations.   The Court finds that Plaintiff's Title VII harassment complaint should be dismissed with prejudice.

Plaintiff filed her complaint within the 2-year statute of limitations applicable to § 1981 claims.   *Id.*; *Beyers*, 209 F.3d at 424.   In order to establish a *prima facie* case of harassment, a Plaintiff belonging to a protected class must show that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on race; (3) the harassment affected a term, condition, or privilege of employment; and (4) Defendant knew of the harassment and failed to take prompt remedial action.   *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002).   Plaintiff has failed to state a *prima facie* case of harassment.

For harassment to be actionable, "the challenged conduct must create an environment that a reasonable person would find hostile or abusive." *Weller v. Citation Oil and Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).   The Court must consider the totality of the circumstances, including the severity of the conduct, the frequency of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct interferes with the employee's work performance.   *Id.*   The mere utterance of an epithet which offends an employee will not, standing alone, constitute harassment.   *Id.* (citations omitted).

Plaintiff has failed to establish that the solitary comment made by McClenaghan rose to the level of racial harassment. While the comment may have offended Plaintiff, it was isolated and there is no evidence that McClenaghan or anyone else at Daimler Chrysler subsequently made offensive comments to Plaintiff. Plaintiff has likewise failed to create a fact issue that the comment had anything to do with her race. Rather, she concludes that the comment, which was apparently intended as a joke, had racial undertones because black women, according to Plaintiff, used to predominantly work in kitchens. Under such reasoning, almost any comment could be misconstrued to have racial implications. Although the Court does not dispute that the comment offended Plaintiff, the Court does not find the comment to have been objectively offensive.

Plaintiff has failed to satisfy the final two elements of her claim as well. While, in her response, she argues that the comment somehow led to her being excluded from meetings and denied promotions, these accusations are unsupported by the evidence on file. Further, Plaintiff has made no showing that her employer failed to take prompt remedial action. Rather, the evidence shows that McClenaghan apologized after making the remark and was never again accused of making a racially offensive remarks to Plaintiff. The Court considers the fact that no further remarks were made to be evidence that Defendant took sufficient remedial action, even if it took no action at all. Plaintiff has offered no evidence to support any other incidents of racial harassment, and the Court finds that Plaintiff's harassment claims should be dismissed with prejudice.

### Tortious Interference

Plaintiff's final claim is for Tortious Interference with an Existing Contract. Plaintiff has produced no evidence that she had an employment contract with Defendant. Even if a contractual relationship existed, it is well settled that a party to a contract cannot be sued for tortious

interference.  *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).  Rather, claims for tortious interference can only be brought against those who are not parties to the contract at issue.  *Id.* Plaintiff's claim for tortious interference is therefore dismissed with prejudice.

Based upon the foregoing, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED and the above titled and numbered cause of action is hereby DISMISSED WITH PREJUDICE.

**SIGNED this 25th day of April, 2006.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

11